**Albert E. ROBINSON, Plaintiff, Appellant,**

v.

**STANLEY HOME PRODUCTS, INC., Defendant, Appellee.**

**No. 5573.**

United States Court of Appeals
First Circuit.

Dec. 10, 1959.

---

Earl F. Nauss, Jr., and Vincent Galvin, Boston, Mass., for appellant.

George H. Foley, Boston, Mass., with whom Blair L. Perry and Hale & Dorr, Boston, Mass., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This action was brought by plaintiff-appellant, a citizen of Massachusetts, in the district court for the District of Massachusetts under section 4 of the Clayton Act, 15 U.S.C.A. § 15, to recover treble damages for injuries alleged to have been suffered because of a violation of section 2(c) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13(c). The defendants were one Gahm, of New Jersey, doing business as Plura Plastics, hereinafter called Plura, as to whom a dismissal was entered for lack of service, and appellee, Stanley Home Products, Inc., a Massachusetts corporation, hereinafter called Stanley. Plaintiff appeals from the allowance of Stanley's motion to dismiss the amended complaint for failure to state a claim upon which relief could be granted.[1]

■ The amended complaint is somewhat inartistic and loosely drawn, and the first question is one of construction. We have attempted to separate the primary facts from various conclusions of the pleader, in order to apply the familiar rule that only material facts well pleaded are to be considered on a motion to dismiss. Dunn v. Gazzola, 1 Cir., 1954, 216 F.2d 709. The first four paragraphs set forth the basic facts already stated. Paragraph 5 alleges that the plaintiff is a manufacturer's representative in

---

1. The parties have neglected to call to our attention another, seemingly later, action between them on apparently the same grounds, in which the complaint was dismissed as against Plura (whether Stanley was ever served does not appear) for failure to state a violation of the Act. Robinson v. Stanley Home Products, Inc., D.C.D.N.J.1959, 174 F.Supp. 414. We shall not further refer to it, since we have some doubts about the case of Henry Broch & Co. v. Federal Trade Commission, 7 Cir., 1958, 261 F.2d 725, certiorari granted 1959, 360 U.S. 908, 79 S.Ct. 1297, 3 L.Ed.2d 1259, upon which that decision was based.

Massachusetts and elsewhere in New England; that he had been employed by Plura as exclusive New England representative to promote the sale of Plura's products (which were to be shipped from New Jersey in interstate commerce), and that plaintiff was to receive a commission on all New England sales "whether or not actually consummated by him." Nothing was mentioned as to the term of this agreement, from which we must assume that it was terminable at will by either party. At the argument plaintiff conceded this assumption to be correct.

Abbreviating its rather lengthy allegations, paragraph 6 asserts that plaintiff procured two orders from Stanley for folding cups made by Plura; that thereafter Stanley made an offer directly to Plura to purchase cups in large quantities at what it knew to be "an unreasonably low price" that "could be accomplished only by the elimination of the Plaintiff's commission * * * but Stanley wished to procure the elimination of the Plaintiff's services and commission so that it might purchase said cups at the substantially reduced price and thereby obtain the Plaintiff's commission for itself in the form of an unlawful discount, all in violation of 15 U.S.C. Section 13(c)." Plaintiff further alleged that "Plura forthwith terminated the Plaintiff's services as New England representative [2] and immediately accepted Stanley's offer." There is, incidentally, no allegation of any correlation in amount between the reduction in price and plaintiff's former commission.

Paragraph 7 is not too happily expressed, but we shall construe it, in plaintiff's favor, to mean that following plaintiff's discharge Plura reduced its prices to Stanley only, and not to other customers. However, since there is no indication that Plura employed other brokers, we take plaintiff's stated claim to be that all customers thereafter, and not merely Stanley, purchased direct. Paragraphs 8 and 9 add nothing of substance, other than general allegations of damage. Paragraph 10 is against the now-dismissed defendant, Plura. The remaining paragraphs allege common-law claims against Stanley with which we shall deal later.

■■ While a party need not plead his evidence, the complaint must contain a sufficient statement of facts which show there is a basis to the claim. Plaintiff here claims under subsection (c) of section 2 of the Robinson-Patman Act, and no other. The specific question under that subsection is whether Stanley accepted from Plura "a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof * *." [3] On the facts alleged, after plaintiff's discharge Plura paid no commission, as such, to anyone. The next question, therefore, is whether plaintiff sufficiently shows an "allowance or discount in lieu thereof" within the meaning of the act. There is little discussion of these words in the cases. In Quality Bakers of America v. Federal Trade Commission, 1 Cir., 1940, 114 F.2d 393, at page 400, we used the phrase "commissions or their equivalent." While a reduction in price to the buyer could fall within this definition, obviously not every one would do so. The question must be, what was the purpose of, or the reason for, the reduction? Plaintiff pleads only his unsupported conclusion that it was a discount in lieu of brokerage. He does not allege that the parties so described it; or that it was designed to reimburse Stanley for some brokerage or servicing obligation ostensibly incurred, or even that it was the mathematical equivalent of what Plura formerly paid to the plaintiff. All that

---

2. Plaintiff conceded at the argument that this meant a total discharge, not merely as to Stanley.

3. We do not reach the question of whether a broker whose possible commission has been diverted is a "person * * *

injured in his business or property by reason of anything forbidden in the antitrust laws" (15 U.S.C.A. § 15), a matter on which the court below expressed doubt.

appears is that Plura would not have been able to make this reduction if it still paid brokerage. To say that a manufacturer who makes a price reduction when he converts to direct selling has, without more, made an allowance in lieu of brokerage would either be to say that he cannot so convert, or that, if he does, the act forbids his passing on any saving to the customer. We do not so construe it.

■ It is true that we have interpreted the complaint as alleging that after Plura ceased to employ a broker its prices were not reduced to everyone. But the fact that there was discrimination between customers does not mean that the favored one received brokerage. The matter covered by section 2(c) is unearned brokerage, per se, not discrimination. Federal Trade Commission v. Simplicity Pattern Co., 1959, 360 U.S. 55, 65, 79 S.Ct. 1005, 3 L.Ed.2d 1079; Great Atlantic & Pacific Tea Co. v. Federal Trade Commission, 3 Cir., 1939, 106 F.2d 667, certiorari denied 1940, 308 U.S. 625, 60 S.Ct. 380, 84 L.Ed. 521, rehearing denied 309 U.S. 694, 60 S.Ct. 466, 84 L.Ed. 1035. Just as proof of the conduct prohibited by this section is not dispelled by showing that there was no discrimination, Southgate Brokerage Co. v. Federal Trade Commission, 4 Cir., 1945, 150 F.2d 607, certiorari denied 326 U.S. 774, 66 S.Ct. 230, 90 L.Ed. 468, it must equally follow that a showing of discrimination does not of itself establish a violation. There is no necessity for calling something brokerage that is not. If, after ceasing to employ brokers, a manufacturer improperly discriminates between customers, section 2(a) will accomplish the purposes of the act. The district court correctly dismissed the federal cause of action.

■ The remaining paragraphs of the complaint, 11 and 12, purport to set forth two common-law claims. After incorporating the allegations of paragraphs 1–9, paragraph 11 alleges that "Stanley conspired with Plura to deprive the Plaintiff of his rightful commissions as manufacturer's representative for Plura and to divert said commissions to Stanley." Paragraph 12 alleges that "Stanley did induce and procure Plura to breach the contract between the Plaintiff and Plura so that the commissions that would otherwise be paid to the Plaintiff would be diverted to Stanley in the form of unreasonably large discounts." We have considerable doubts whether either paragraph asserts a valid cause of action for unjustifiable interference with a contractual, or continuing business, relationship. Stanley, as a purchaser from Plura, had a legitimate economic interest to further. Such interest would appear to furnish defendant with a privilege unless defendant had adopted or advocated some illegal conduct. See Restatement, Torts, Ch. 37, § 771. The only impropriety suggested is an alleged violation of section 2(c) of the Robinson-Patman Act, the allegation we have already held unsupported. The district court did not pass on the merits of these claims, however, but held that the federal claim having been dismissed on the pleadings, the court was not obliged to retain a common-law dispute between two Massachusetts citizens, citing Massachusetts Universalist Convention v. Hildreth & Rogers Co., 1 Cir., 1950, 183 F.2d 497, and Dixon v. Martin, 5 Cir., 1958, 260 F.2d 809. Whatever may be the limits of pendent jurisdiction, we do not regard Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, as requiring, when the federal claim is dismissed on the pleadings, the retention of state claims which are, at best, dubious on their face.

Judgment will enter affirming the judgment of the District Court.