WALES HOME REMODELING CO., INC., Plaintiff,

v.

ALSIDE ALUMINUM CORP., a/k/a Alside, Inc., and Tri-State Home Improvement Company, Inc., Defendants.

Civ. A. No. 75–C–682.

United States District Court, E. D. Wisconsin.

Jan. 30, 1978.

---

2. 42 U.S.C. § 423(d)(2)(A).

Herbert L. Usow, Timothy K. Tollaksen, Milwaukee, Wis., for plaintiff.

Robert A. DuPuy, Milwaukee, Wis., for defendant Alside Aluminum Corp., a/k/a Alside, Inc.; William J. McKim, U. S. Steel Corp., Pittsburgh, Pa., James R. Bussman, Alside, Inc., Akron, Ohio, of counsel.

Robert A. Levine, Milwaukee, Wis., for defendant Tri-State Home Improvement Co., Inc.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This action is an anti-trust action for treble damages. Plaintiff Wales Home Remodeling Co., Inc. ("Wales"), a Wisconsin corporation, is engaged in the business of selling at retail and installing residential steel siding. The defendant Alside, Inc. ("Alside"), a foreign corporation, is a subsidiary of the United States Steel Company and is engaged in the business of manufacturing and selling to wholesalers and retailers steel siding under the brand names "Sawkerf" and "Satinwood", as well as siding accessories. The defendant Tri-State Home Improvement Co., Inc. ("Tri-State"), a Wisconsin corporation, is engaged in the business of selling at retail and installing residential steel siding.

The action is presently before the Court on plaintiff's motion for leave to amend its first amended complaint and the defendants' motions for summary judgment. For the reasons hereafter stated, the plaintiff's motion will be denied and the defendants' motions will be granted.

On February 26, 1976, the plaintiff filed its first amended complaint, alleging therein that the defendants have violated Sections 1 and 2 of the Sherman Anti-Trust Act, 15 U.S.C. Sections 1 and 2, and Sections 2(a) and (c) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. Section 13(a) and (c). Plaintiff claims that it has been engaged in the residential steel siding business in Milwaukee since 1970, that defendant Tri-State entered the Milwaukee residential steel siding market in 1971 and 1972, and that since that time, Tri-State has enjoyed an exclusive direct purchase relationship with defendant Alside in reference to Alside steel siding in the Milwaukee area. As appears from the depositions and affidavits submitted, the exclusive arrangement in fact relates only to Alside Satinwood siding. Plaintiff further alleges that it has requested a similar direct purchase arrangement with Alside and has been refused, and as a result of such refusal it has been forced to purchase Alside siding through Central Building Products, Inc. ("Central"), a Wisconsin corporation, which is the only Milwaukee area wholesale distributor of Alside steel siding, at a cost at least 15% above that at which Tri-State is able to purchase Alside siding. Plaintiff alleges that Alside siding has superior salability to other brands, and that in result Tri-State, because of its direct purchase arrangement with Alside, has acquired a controlling share of the retail residential steel siding market in Milwaukee.

The anti-trust law violations which plaintiff alleges in its first amended complaint are, specifically, as follows: (1) that the cost savings to Tri-State which resulted from its exclusive direct purchase arrangement with Alside constitute price discrimination in violation of Sections 2(a) and 2(c) of the Clayton Act, as amended by the Robinson-Patman Act; and (2) that by virtue of the foregoing Alside and Tri-State did knowingly and unlawfully combine, conspire and agree with each other and with diverse other persons to restrain and monopolize the sale and application of residential steel siding in the Milwaukee, Wisconsin area, in violation of Sections 1 and 2 of the Sherman Anti-Trust Act, 15 U.S.C. Sections 1 and 2. Plaintiff alleges that in result of such acts, plaintiff's steel siding business has been reduced by more than 65% since 1972, to plaintiff's damage in 1972, 1973, 1974 and 1975 in the amount of $500,000, wherefor plaintiff seeks treble damages in the amount of $1,500,000 pursuant to Section 4 of the Clayton Act, 15 U.S.C. Section 15.

The defendants Alside and Tri-State moved for summary judgment in this action on July 18, 1977, and July 22, 1977, respectively. Thereafter on July 25, 1977, the plaintiff filed a motion for leave to amend its first amended complaint. The proposed second amended complaint repeats the allegations contained in the first amended complaint and in addition alleges a violation of Section 2(d) of the Clayton Act, as amended by the Robinson-Patman Act, to wit: that Alside has at all times material discriminatorily paid money to Tri-State in the form of credits to reimburse Tri-State for the sales of Alside residential steel siding and has never made such payments available to any other residential steel siding dealers in the Milwaukee area.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend shall be freely given when justice so requires. The defendants argue that leave should be denied in this matter (1) because plaintiff was dilatory in filing the motion; (2) because the amended complaint is without merit; and (3) because it is unintelligible. The Court agrees that leave to amend should be denied, for the reason, however, that given the circumstances of this action it would be unjust to permit the plaintiff to amend its complaint subsequent to the defendants having filed motions for summary judgment.

The grant of leave to amend pleadings is within the discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1970). In *Kirby v. P. R. Mallory & Co., Inc.*, 489 F.2d 904 (7th Cir. 1973), in upholding the trial court's refusal to permit amendment of a complaint to insert a Clayton Act Section 3 claim after the defendant had moved for summary judgment, the Court of Appeals for the Seventh Circuit stated at 912:

".  .  . It is clearly unfair to Mallory to permit Kirby to remain mute for this period and then to bolster his pleadings to prevent an anticipated adverse judgment  .  .  ."

■ Although the plaintiff here did not become aware of the facts on which it purports to base its proposed new claim until four months before filing the motion to amend, as opposed to two and one-half years in *Kirby,* the Court is of the opinion that in this case as well it would be unfair to the defendants to allow the plaintiff to prevent an anticipated adverse judgment through the method of amending its complaint. This is particularly so since the plaintiff will not be foreclosed by the statute of limitations from pursuing its claim in a new action.

The defendants have moved for summary judgment with respect to the Robinson-Patman Act claims set forth in the plaintiff's first amended complaint on the basis that the complaint fails to state a cause of action under those Acts. Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. Section 13(a), provides in part:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them. * * * "

■ Defendants argue that, since Alside has not sold Satinwood steel siding to Wales at any time material to the complaint, Wales is not a "purchaser" within the meaning of 15 U.S.C. Section 13(a). The Court agrees.

It is undisputed that Wales has not purchased Satinwood siding directly from Alside. See Paragraphs 8 and 9 of the first amended complaint; Wales deposition of March 26, 1976, at 9–10, 14–20, 68–69. "'The term purchaser . . . does not mean one who seeks to purchase . . . (I)t does not mean a prospective purchaser, or one who wishes to purchase . . .'" *Chicago Seating Co. v. S. Karpen & Bros.,* 177 F.2d 863, 867 (7th Cir. 1949), quoting *Shaw, Inc. v. Wilson–Jones, Co.,* 105 F.2d 331 (3d Cir. 1939). See also *Klein v. Lionel Corporation,* 138 F.Supp. 560 (D.Del.1956), aff'd, 237 F.2d 13, wherein the district court stated at 566:

"* * * (A) plaintiff has no cause of action for discrimination under 15 U.S. C.A. Section 13(a), where it appears that the plaintiff was not a purchaser from the seller but a retailer purchasing from a jobber * * *"

An outright refusal to sell to one customer also does not constitute a Robinson-Patman Act violation. *Mullis v. ARCO Petroleum Corporation,* 502 F.2d 290, 294 (7th Cir. 1974); F. Rowe, *Price Discrimination Under the Robinson–Patman Act,* 45 (1966).

Plaintiff Wales argues that it is a purchaser within the meaning of 15 U.S.C. Section 13(a) by virtue of the "indirect purchaser" doctrine, since it purchased from Central States, Inc., which is the exclusive wholesale purchaser from Alside in the Milwaukee area. The indirect purchaser doctrine provides that, although the actual sale takes place through an intermediary, if a manufacturer in fact deals directly with a purchaser of its products by controlling the terms upon which the purchaser buys, then that purchaser will be within the terms of 15 U.S.C. Section 13(a). *Checker Motors Corporation v. Chrysler Corporation* (S.D.N. Y.1968), 283 F.Supp. 876, 887, aff'd, 405 F.2d 319 (1969), cert. den., 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969). However, the indirect purchaser doctrine requires that there be some showing made that the intermediary is in fact controlled by the manufacturer. See *Purolator Products, Inc. v. Federal Trade Commission,* 352 F.2d 874, 883 (7th Cir. 1965), cert. denied, 389 U.S. 1045, 88 S.Ct. 758, 19 L.Ed.2d 837 (1968); *Federal Trade Commission v. Fred Meyer, Inc.,* 390 U.S. 341, 88 S.Ct. 904, 19 L.Ed.2d 1222 (1968), on which plaintiff relies, concerns 15 U.S.C. Section 13(d).

Plaintiff claims at page 3 of its brief in opposition to the motions for summary judgment that it has not yet determined the precise extent of control exercised by Alside over Central's resale terms, since it has not yet completed discovery. Plaintiff has also failed to allege in the complaint that Alside exercises any control over Central's resale terms. All that plaintiff has so far shown is that Alside sells Satinwood steel siding and accessories to Central and to Tri-State at the same price (Tr. of Rufer deposition, March 24, 1977, at 69), a fact which the defendants do not dispute.

The Court agrees with the plaintiff that the burden of proof is on the defendant-movant in a summary judgment motion to refute the allegations of the complaint. It also, however, finds that the defendants have met this burden in Paragraphs 6 and 7 of the affidavit of Henry B. Leshman, the Vice-President of Alside, Inc., filed with the motion for summary judgment, wherein Mr. Leshman states that Central is a corporate entity separate and distinct from Alside and with no affiliation with Alside except as a customer, and that Alside in no way controls the price at which Central resells Alside siding. Wales has brought nothing to the Court's attention which would refute the facts asserted in the affidavit. As stated in *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253 (1968) at 290, 88 S.Ct. 1575 at 1593, 20 L.Ed.2d 569:

". . . While we recognize the importance of preserving litigants' rights to a trial on their claims, we are not prepared to extend those rights to the point of requiring that anyone who files an antitrust complaint setting forth a valid cause of action be entitled to a full-dress trial notwithstanding the absence of any significant probative evidence tending to support the complaint."

The defendants having met their initial burden of proof with respect to the claim under Section 2(a) of the Clayton Act, as amended, the burden shifts to the plaintiff to produce evidence in support of its allegations, *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and this the Court finds the plaintiff has failed to do.

■ Plaintiff's second claim is that the elimination of distributor's costs to Tri-State by means of the exclusive direct sales agreement constitutes an illegal discount in lieu of brokerage within the meaning of Section 2(c) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. Section 13(c), which provides:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid."

The legislative history of Section 2(c) indicates that:

". . . it prohibits the direct or indirect payment of brokerage except for . . . services (actually) rendered. It prohibits its allowance by the buyer direct to the seller, or by the seller direct to the buyer; and it prohibits its payment by either to an agent or intermediary acting in fact for or in behalf, or subject to the direct or indirect control of the other." H.Rep. No. 2287, 74th Cong., 2d Sess. 15 (1936).

Thus Section 2(c) suggests either that the buyer and seller themselves are in a brokerage relationship, or that there is a third party involved allegedly performing services for either of them.

■ Plaintiff has not alleged that Alside and Tri-State are themselves in a brokerage relationship, but it claims that Central is an intermediary whose "commission, brokerage, or other compensation" was eliminated for Tri-State by Alside's exclusive direct sales arrangement, and that "other compensation" includes Central's mark-up on its resale prices to Wales. The Court finds no merit in this suggestion. There is no showing that Wales has made any payment of any kind to Central, nor that Central is in fact an intermediary for Alside in its sales to others than Tri-State, and therefore the type of relationship required for a violation of Section 2(c) has not been shown to exist between the defendants. Furthermore Central is not a party to this action, and as between Alside and Tri-State, the Court is of the opinion that a mere refusal to sell directly to one purchaser does not create an unlawful brokerage relationship between the seller and another purchaser who is able to purchase directly.

The plaintiff's final claim is that the defendant Alside's direct sales to Tri-State, coupled with its refusal to sell directly to Wales and others like it, constitute a conspiracy in restraint of trade between Alside and Tri-State and an unlawful attempt to monopolize trade in steel siding and accessories in the Milwaukee area in violation of Sections 1 and 2 of the Sherman Anti-Trust Act, 15 U.S.C. Sections 1 and 2.

The defendants argue in opposition that a mere unilateral refusal to deal does not constitute a violation of the Sherman Act, that plaintiff by admission of its own president in fact is claiming a Sherman Act violation only with respect to Satinwood steel siding, that plaintiff has admitted in its complaint that it is one of twenty sellers of retail siding in the Milwaukee area and that there exist other and competing brands of steel siding, and therefore, that on the basis of the undisputed material facts in this action, the plaintiff has failed to show the existence of any factual disputes which, if resolved in its favor, would establish a violation of the Sherman Act. The Court agrees.

**914**

■ A showing of a unilateral refusal to deal, without more, does not establish a violation of the Sherman Act. *United States v. Colgate & Company,* 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919); *Bowen v. New York News, Inc.,* 522 F.2d 1242 (2d Cir. 1975). As stated in *United States v. Arnold, Schwinn & Co.,* 388 U.S. 365, 376, 87 S.Ct. 1856, 1864, 18 L.Ed.2d 1249 (1967):

> "If the restraint stops at that point—if nothing more is involved than vertical 'confinement' of the manufacturer's own sales of the merchandise to selected dealers, and if competitive products are readily available to others, the restriction . . . would not violate the Sherman Act."

Under those circumstances, an adverse effect on the business of one not traded with is immaterial. *Ricchetti v. Meister Brau, Inc.,* 431 F.2d 1211 (9th Cir. 1970), cert. den., 401 U.S. 939, 91 S.Ct. 934, 28 L.Ed.2d 219 (1971); *Joseph E. Seagram and Sons, Inc. v. Hawaiian Oke & Liquors, Ltd.,* 416 F.2d 71 (9th Cir. 1969), cert. denied, 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755, reh. den., 397 U.S. 1003, 90 S.Ct. 1113, 25 L.Ed.2d 415 (1970).

In addition to the refusal to deal, however, plaintiff claims that Alside enabled Tri-State to create a monopoly in the residential steel siding market and that Alside and Tri-State agreed to conspire to monopolize and restrain trade. See the first amended complaint, paragraphs 10–14. In the deposition of Mr. Lawrence A. Wales, the president of Wales, the following conversation occurred:

> "A My whole argument to this lawsuit is that if Tri-State would have never had a special price and been made a favorite dealer pricewise, I wouldn't be in here today, looking for violations. If Tri-State had to buy through Central Building Products, I feel that then it would be fair for everybody, no matter what the price was. And I am not arguing Central's price to everybody, including myself, I am contending that an unfair price was set up to a retail competitor of mine. (Tr. at 63)

> \* \* \* \* \* \*

> "Q Do you know of any agreement between United States Steel or its subsidiary Alside, if it is a subsidiary, and Tri-State, other than the sales of Satinwood siding by United States Steel directly to Tri-State in truckload lots at a favored price? Question read.)

> "Mr. Usow: Do you understand the question?

> "The Witness: Yes, I understand the question.

> "Mr. Usow: Okay.

> "A I know of no other agreements, no.

> "Q Do you know of any agreements between United States Steel and/or its subsidiary Alside, if it is a subsidiary, and any other person or firm with regard to the sale of Satinwood—

> "A No.

> "Q —siding?

> "A No.

> "Q Then it is accurate to characterize your complaint as being based upon the sales by Alside to Tri-State directly in truckload lots of Satinwood siding at a lower price than you were able to buy through a distributor; is that the basis of your complaint?

> "A Yes." (Tr. at 66–67.)

At page 99 of the deposition, Mr. Wales admitted:

> "Q . . . Do you claim that Tri-State has a monopoly of all residential steel siding in Milwaukee?

> "A No. I think they have a monopoly on the U.S. Steel siding pricewise.

> "Q U.S. Steel siding?

> "A Yes.

> "Q All right. And do you know—

> "A U.S. Steel Satinwood siding to be more specific."

Thus it is clear, as defendants claim, that plaintiff's complaint in essence is that Alside's unilateral refusal to sell Satinwood siding to plaintiff and other retail sellers in itself violates the Sherman Act. As clearly,

a showing of such unilateral refusal by itself is not sufficient to prove a violation.

Plaintiff has attempted to cure this defect by filing with its answering brief to the defendants' motions an affidavit made by Mr. Wales in which he states:

"3. Based on my experience with WALES and in the residential steel siding market generally in the Milwaukee and surrounding areas that ALSIDE Satinwood Steel Siding is preferred by homeowners over all other manufacturers and that homeowners in this area are willing to pay a higher price for ALSIDE Satinwood Steel Siding and accessories than for other brands or manufacturers.

\* \* \* \* \* \*

"6. \* \* \* WALES has attempted to use other manufacturers and brands but has found that homeowners prefer ALSIDE Satinwood Steel Siding and WALES has suffered a substantial sales decline and loss of salesmen as a result of its continuing inability to compete with TRI–STATE because of the difference in quality and demand between ALSIDE Satinwood Steel Siding and other manufacturers and brands.

"7. Based on my knowledge of the Milwaukee area residential steel siding market, it is my opinion that TRI–STATE, by virtue of its ability to purchase ALSIDE Satinwood Steel Siding and accessories at a price substantially lower than any of the other dealers in said market, has attained a predominant share of said market."

Such statements are mere conclusions. Plaintiff has itself admitted in its amended complaint that there are approximately twenty firms which sell steel siding at retail in the Milwaukee area and that there are four competing brands of steel siding, in addition to an unspecified number of non-steel competing products. See also the deposition of Mr. Wales at 99 to 104.

There has been no showing that steel siding is, as claimed, a relevant market, nor that Satinwood siding by itself is a relevant market. Furthermore, leaving aside the fact that the plaintiff has failed to allege in the complaint that Alside Satinwood siding in itself forms a relevant market, the law is that:

"A manufacturer has a 'natural monopoly over his own products, especially when the products are sold under trademark . . .' *Industrial Building Materials, Inc. v. Interchemical Corp.,* 437 F.2d 1336, 1344 (9th Cir. 1970). *See United States v. E. I. DuPont de Nemours & Co.,* 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956). Unless the manufacturer used his natural monopoly to gain control of the relevant market in which his products compete, the antitrust laws are not violated." *Bushie v. Stenocord Corporation,* 460 F.2d 116, 120 (9th Cir. 1972). Plaintiff has presented no evidence in support of its allegation that Alside used its natural monopoly over Satinwood siding to gain control of the relevant market, nor, indeed, has plaintiff made any satisfactory showing as to what the relevant market is.

The Court is of the opinion that the defendants, based on the allegations in the first amended complaint and on the deposition of Mr. Wales, have made a sufficient showing in support of their motions for summary judgment to satisfy their initial burden of proof, and that the plaintiff has failed to come forth with any evidence in support of its Sherman Act claims. Therefore, summary judgment for the defendants is appropriate.

For the foregoing reasons,

IT IS ORDERED that the motion of the plaintiff Wales Home Remodeling Company, Inc., for leave to amend its first amended complaint be, and it hereby is denied.

IT IS FURTHER ORDERED that the motions of the defendants Alside, Inc., and Tri-State Home Improvement Company, Inc., for summary judgment be, and they hereby are, granted.