**CHROMA LIGHTING, a California corporation; and Charles T. Von Der Ahe, an individual, Plaintiffs–Appellees,**

v.

**GTE PRODUCTS CORPORATION, a Delaware corporation, et al., Defendants,**

**and**

**Sylvania Lighting Services Corporation, a Delaware corporation, Defendant–Appellant.**

**No. 94–55581.**

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 8, 1995.

Decided April 10, 1997.

---

M. Laurence Popofsky, Heller, Ehrman, White & McAuliffe, San Francisco, CA, for defendant-appellant.

Barry R. Laubscher, Grant & Laubscher, Irvine, CA, for plaintiffs-appellees.

Before: BROWNING, NORRIS, and REINHARDT, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge.

Plaintiff Charles Von Der Ahe, d/b/a Chroma Lighting, was a distributor of Osram Sylvania lighting products. After going out of business, Von Der Ahe sued Sylvania for price discrimination in violation of § 2(a) of the Clayton Act, as amended by the Robinson–Patman Antidiscrimination Act of 1936, 15 U.S.C. § 13(a), and for recovery under California tort law. On the Robinson–Patman claim, Von Der Ahe alleged that Sylvania had given discounts to Von Der Ahe's larger competitors, without offering the same discounts to Von Der Ahe, and that Von Der Ahe had been injured by Sylvania's discriminatory practices. The jury found for Von Der Ahe on all counts and awarded treble damages of $3,525,000. ER at 719–20. After trial, Sylvania moved for judgment as a matter of law, alleging, *inter alia*, that there was insufficient evidence to support a finding of injury to competition on the Robinson–Patman claim. ER at 438–40. The district court denied the motion. Sylvania appeals from the denial of its post-trial motion and from the judgment. On appeal, Sylvania claims that the evidence at trial was insufficient as a matter of law to support the jury's finding of injury to competition.[1]

In *FTC v. Morton Salt*, 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed. 1196 (1948), the Court held that competitive injury in a secondary-line[2] Robinson–Patman case may be inferred from evidence of injury to an individual competitor. More specifically, *Morton Salt* permits a factfinder to infer injury to competition from evidence of a substantial price difference over time, because such a price difference may harm the competitive opportunities of individual merchants, and thus create a "reasonable possibility" that competition itself may be harmed. *Id.* at 46–47, 68 S.Ct. at 828–29. The question presented by Sylvania's appeal is whether the inference of competitive injury that arises from a showing of harm to an individual competitor in a secondary-line price discrimination case may be overcome by a showing that competition in the relevant market remains healthy. This question was left open by *Morton Salt*, and the circuits are divided on the issue. The D.C. Circuit, for example, has held that the inference of competitive injury may be rebutted by a

---

1. All other issues raised by Sylvania's appeal are disposed of in a memorandum disposition filed herewith.

2. Secondary-line price discrimination affects competition between buyers of a discriminating seller's goods, while primary-line discrimination affects competition between a discriminating seller and others who sell the same goods.

showing of no actual harm to competition because the Robinson–Patman Act must be construed in light of the pro-competitive purpose of all other antitrust legislation. *Boise Cascade Corp. v. FTC,* 837 F.2d 1127, 1144 (D.C.Cir.1988). The Third Circuit, on the other hand, has held that the inference of competitive injury may not be overcome by evidence of no harm to competition because the Robinson–Patman Act was designed specifically to protect individual competitors rather than competition in general. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1532–33 (3d Cir.1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991).

Appellant Sylvania argues that we should follow *Boise.* Like *Boise,* Sylvania reasons that the Robinson–Patman Act condemns price discrimination only to the extent that the discrimination threatens to injure competition, and that the Act should be construed consistently with the broader policies of the antitrust laws to protect competition, not individual competitors. Appellee Von Der Ahe argues that injury to competition in a secondary-line Robinson–Patman case is conclusively established by proof of injury to a competitor, and that the inference of competitive injury that arises from proof of injury to a competitor may not be rebutted by evidence that competition was not adversely affected. We agree with Von Der Ahe and the Third Circuit, and affirm the jury verdict for Von Der Ahe on the Robinson–Patman claim.

## I

The Robinson–Patman Act reads in relevant part:

It shall be unlawful for any person engaged in commerce ... to discriminate in price between different purchasers of commodities of like grade and quality, ... where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefits of such discrimination, or with customers of either of them ...

15 U.S.C. § 13(a). In *Boise,* the D.C. Circuit held that the language of the Robinson–Patman Act, which prohibits price discriminations that tend "to injure, destroy, or prevent competition," indicates that Congress was concerned about the preservation of competition, and not the protection of individual competitors. *Boise,* 837 F.2d at 1143. In making this argument, the D.C. Circuit attempted to reconcile Robinson–Patman with other antitrust laws, whose purpose is to promote "pro-competitive efficiency and maximization of consumer welfare." *Id.* at 1138. Asserting that harm to competition is "the name of the Robinson–Patman game," *id.* at 1143, the D.C. Circuit reasoned that it would "def[y] both logic and the import of *Morton Salt*" to hold that an inference of competitive injury derived from evidence of harm to individual competitors may not be overcome when there is no actual harm to competition. *Id.* at 1144.

In dissent, Judge Mikva criticized the majority in *Boise* for following its own economic philosophy rather than interpreting the specific language and legislative history of the Robinson–Patman Act. *Id.* at 1152–53 (Mikva, J., dissenting). First, Judge Mikva accused the majority of overlooking the statutory language, which expressly proscribes price differentials that tend "to injure, destroy, or prevent competition *with any person*" who enjoys the benefits of the differential. *Id.* at 1157. This language, in Judge Mikva's view, shifts the focus of the statute from protecting competition to protecting individual disfavored buyers from the loss of business to favored buyers.

Judge Mikva cited *Morton Salt*'s language that "Congress intended to protect *a merchant* from competitive injury attributable to discriminatory prices." *Id.* (quoting *Morton Salt,* 334 U.S. at 49, 68 S.Ct. at 829–30). In his view, this intent to protect individual merchants explains why *Morton Salt* permits a finding of injury to competition based on a showing of injury to an individual competitor victimized by the discrimination. *Id.* (citing *Morton Salt,* 334 U.S. at 49, 68 S.Ct. at 829–30). Judge Mikva argued that this language in *Morton Salt* shows that the Court interpreted Robinson–Patman as dispensing with the need to show injury to competition. *Id.*

at 1154. Finally, Judge Mikva noted that the Supreme Court had once addressed the issue of how to rebut the *Morton Salt* inference by creating a *"specific* type of rebuttal evidence"—"evidence breaking the causal connection between a price differential and [an individual competitor's] lost sales or profits"—and thus implicitly rejecting other methods for overcoming the inference. *Id.* (quoting *Falls City Indus., Inc. v. Vanco Beverage, Inc.,* 460 U.S. 428, 435, 103 S.Ct. 1282, 1288–89, 75 L.Ed.2d 174 (1983)).

Judge Mikva found support for his position in the legislative history:

> The existing law has in practice been too restrictive in requiring a showing of general injury to competitive conditions ... whereas the more immediately important concern is in injury to the competitor victimized by the discrimination. Only through such injury in fact can the larger, general injury result. Through this broadening of the jurisdiction of the act, a more effective suppression of such injuries is possible and the more effective protection of the public interest at the same time is achieved.

*Id.* at 1158 (quoting H.R.Rep. No. 2287, 74th Cong., 2d Sess. 8 (1936)). Judge Mikva chastised the majority for interpreting Robinson–Patman according to its own version of antitrust policy, when the statutory language and the legislative history both show that Congress has already adopted its own policy of protecting individual merchants as a means of protecting competition. *Id.* at 1153.

In *Feeser,* the Third Circuit agreed with Judge Mikva that the Robinson–Patman Act proscribes secondary-line price discrimination that injures individual competitors. *Feeser,* 909 F.2d at 1533. The Third Circuit pointed out that the language "may be substantially to lessen competition or tend to create a monopoly," which had been part of the 1914 version of the Clayton Act, refers generally to broad impacts on competition, while the Robinson–Patman Act added the language "to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefits of such discrimination" specifically to protect the ability of individual companies to compete. *Id.* at 1532.

The Third Circuit also found support in the legislative history. First, the Third Circuit cited the Senate Report to show that Congress had intended to target injury to individual competitors as an appropriate means to protect competition in the long run, i.e. "to catch the weed in the seed." *Id.* at 1533 (quoting S.Rep. No. 1502, 74th Cong., 2d Sess. 4 (1936)). Second, the floor statement of a congressman in charge of the Conference Report for the Robinson–Patman Act shows that the language "to injure, destroy, or prevent competition with any person" was added to prohibit injury to the "immediate competition with the grantor or grantee" of a price discrimination. *Id.* (quoting 80 Cong. Rec. H9417 (1936) (statement by Rep. Utterback)). Thus, the Third Circuit's reading of the legislative history is in accord with Judge Mikva's reading that Congress amended the Clayton Act to expand its protection to individual competitors.

The Third Circuit also relied on *Morton Salt* in stating that it is "self-evident" that when sellers sell their goods to some customers substantially cheaper than they sell like goods to the competitors of these customers, there is a reasonable possibility that competition may be harmed. *Id.* (citing *Morton Salt,* 334 U.S. at 50–51, 68 S.Ct. at 830–31). It also cited dictum from *Monahan's Marine, Inc. v. Boston Whaler, Inc.,* 866 F.2d 525, 529 (1st Cir.1989) (Breyer, J.), that a Robinson–Patman claim differs in nature from a Sherman Act claim because the Sherman Act protects competition, while the Robinson–Patman Act protects *"those who compete* with a favored seller, not just the overall competitive practice." *Id.* at 1535 (quoting *Monahan's Marine,* 866 F.2d at 529).[3]

---

**3.** Several other circuits have addressed this issue, though without the same depth of analysis found in *Boise* and *Feeser. Compare Alan's of Atlanta, Inc. v. Minolta Corp.,* 903 F.2d 1414, 1418 n. 6, 1426 (11th Cir.1990) (Robinson–Patman Act focuses on injury to competitors, not to competition), *with Richard Short Oil Co. v. Texaco, Inc.,* 799 F.2d 415, 420 (8th Cir.1986) (alternative holding) (Robinson–Patman Act focuses on injury to competition, not to competitors), *and Motive Parts Warehouse v. Facet Enterprises,* 774 F.2d 380, 395 (10th Cir.1985) (same).

## II

We agree with Judge Mikva and the Third Circuit. We are persuaded that the language that the Robinson–Patman Act added to § 2(a) of the Clayton Act—"to injure, destroy, or prevent competition"—expresses Congressional intent to protect individual competitors, not just market competition, from the effects of price discrimination. As we said in *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1446 n. 18 (9th Cir.1995) (dicta), "[t]he purpose of this passage was to relieve secondary-line plaintiffs—small retailers who are disfavored by discriminating suppliers—from having to prove harm to competition marketwide, allowing them instead to impose liability simply by proving effects to individual competitors." *See also* 3 Earl W. Kintner & Joseph P. Bauer, Federal Antitrust Law §§ 19.2, 22.4 (1983) (addition of phrase "to injure, destroy, or prevent competition with any person" was to expand protection of original Clayton Act to individual competitors).

We also agree with the Third Circuit and Judge Mikva that the legislative history confirms that Congress amended the Clayton Act specifically to extend its protection to individual competitors. Congress passed the Robinson–Patman Act primarily out of concern for small retailers who could not compete with large chain-store purchasers because they could not buy in quantity. *See Falls City*, 460 U.S. at 436, 103 S.Ct. at 1289–90; *FTC v. Morton Salt Co.*, 334 U.S. at 49, 68 S.Ct. at 829–30. The House Report shows that the Act was animated by concern for "the survival of independent merchants, manufacturers, and other businessmen." H.R.Rep. No. 2287, 74th Cong., 2d Sess. 3 (1936); *see also* Lawrence Anthony Sullivan, Handbook of the Law of Antitrust § 225(a) (finding support in legislative history for construing Robinson–Patman Act to protect individual small competitors irrespective of efficiency concerns).

## III

Sylvania also relies upon *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 548 (9th Cir.1983), *cert. denied,* 465 U.S. 1038, 104 S.Ct. 1315, 79 L.Ed.2d 712 (1984), a secondary-line case which stated that the Robinson–Patman Act, like other antitrust laws, must be construed to protect competition, not individual competitors.[4] *Foremost Pro* held that to survive a Rule 12(b)(6) motion, a plaintiff must allege injury to competition generally, not just injury to a specific competitor, because "[i]njury to a specific competitor is not enough from which a court may infer that an alleged price discrimination may 'substantially' injure competition." *Id.* Although *Foremost Pro* had no occasion to address the issue presented in this appeal— whether an inference of competitive injury may be overcome by a showing of no actual harm to competition—its sweeping statement that the Robinson–Patman Act must be construed to protect competition, not competitors, lends support to Sylvania's position that a defendant in a secondary-line price discrimination case must be permitted to make a showing of no harm to competition.

We believe, however, that *Foremost Pro* is no longer the law of this circuit because it was overruled, *sub silentio*, by *Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1041 (9th Cir. 1987), *aff'd*, 496 U.S. 543, 110 S.Ct. 2535, 110 L.Ed.2d 492 (1990). Without discussing *Foremost Pro, Hasbrouck* held that harm to competition in a secondary–line Robinson-Patman case may be inferred from evidence of harm to an individual competitor. *Id.* In so holding, *Hasbrouck* relied on *Falls City*, 460 U.S. at 435–36, 103 S.Ct. at 1288–90, a case decided after *Foremost Pro. Falls City* held that injury to competition may be inferred from proof of a substantial price discrimination between competing purchasers over time. *Id.* at 435, 103 S.Ct. at 1288–89. By relying on *Falls City* rather than on *Foremost Pro, Hasbrouck* appears to have interpreted *Falls City* as undermining the holding of *Foremost Pro. See Landreth v. Internal Revenue Service*, 859 F.2d 643, 648 (9th Cir.1988) (three judge panel may reconsider Ninth Circuit precedent if intervening Supreme Court decision undermines that precedent). We note in addition that *Hasbrouck's* holding is consistent with *Morton Salt's* reasoning that the Robinson–Patman Act "was intended to justify a finding of

---

4. *Foremost Pro* was later cited with approval by the D.C. Circuit in *Boise*, 837 F.2d at 1143.

injury to competition by a showing of 'injury to the competitor victimized by the discrimination.'" *Morton Salt*, 334 U.S. at 49, 68 S.Ct. at 830 (quoting S. Rep. No. 1502, 74th Cong., 2d Sess. 4 (1936)). Because we are no longer bound by the reasoning of *Foremost Pro*, we are free to decide the question left open by *Morton Salt*, *Falls City*, and *Hasbrouck*, i.e. whether proof of harm to an individual competitor gives rise to an irrebuttable presumption of competitive injury in a secondary-line price discrimination case.

### IV

Finally, Sylvania relies on *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993). *Brooke Group*, a primary-line price discrimination case, reasons that "[b]y its terms, the Robinson-Patman Act condemns price discrimination only to the extent it threatens to injure *competition*," and therefore holds that the Act must be construed consistently with the broader policies of the antitrust laws to protect competition, not competitors. *Id.* at 219–21, 113 S.Ct. at 2586. Sylvania claims that the *Brooke Group* reasoning applies with equal force to secondary-line price discrimination claims.

We decline to extend the reasoning of *Brooke Group* to secondary-line cases because of the significant differences between primary- and secondary-line claims. First and foremost, Congress' concern for the fate of individual competitors, as expressed in the legislative history of the Robinson-Patman Act, focussed on secondary-line, not primary-line competition. *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*, 79 F.3d 182, 191-92 (1st Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 294, 136 L.Ed.2d 214 (1996); *Henry v. Chloride*, 809 F.2d 1334, 1339 (8th Cir.1987); 3 Phillip Areeda & Donald F. Turner, Antitrust Law ¶ 720c (1978). Since the original Clayton Act addressed only primary-line injury, Congress passed the Robinson-Patman Act to add protection against secondary-line injury, more specifically against injury to small retailers. *Coastal Fuels*, 79 F.3d at 192. Thus, the language added to the Clayton Act by the Robinson-Patman Act, and the legislative history that expresses Congress' solicitude for individual buyers, are still applicable in secondary-line

cases, even though they are not applicable in primary-line cases after *Brooke Group*. *See id.* at 191–93 (*Morton Salt's* inference of competitive injury still good law after *Brooke Group* because *Brooke Group* applies only to primary-line injury cases). Second, *Brooke Group* said that Robinson-Patman protects competition, not competitors, in the context of analogizing primary-line price discrimination claims to Sherman Act predatory pricing claims. The same analogy may not be made to secondary-line price discrimination claims. *Id.* at 193.

### Conclusion

We hold that in a secondary-line Robinson-Patman case, the *Morton Salt* inference that competitive injury to individual buyers harms competition generally may not be overcome by proof of no harm to competition.

We AFFIRM the judgment on the Robinson-Patman claim.

