ANHEUSER–BUSCH, INC., Plaintiff,

v.

G.T. BRITTS DISTRIBUTING, INC.
and Richard Wordon,
Defendants.

No. 98–CV–0995.

United States District Court,
N.D. New York.

April 6, 1999.

Lombardi, Reinhard Law Firm, Albany, NY (Richard P. Walsh, Jr., of counsel), for plaintiff.

Norton, Christensen Law Firm, Goshen, NY (Henry N. Christensen, of counsel), for defendants.

## MEMORANDUM—DECISION & ORDER

. McAVOY, Chief Judge.

Plaintiff Anheuser–Busch, Inc. ("plaintiff") commenced an action against Defendants G.T. Britts Distributing, Inc. ("Britts") and Richard Wordon (the "defendants") arising out of an alleged breach

of a distribution agreement. Defendants asserted counterclaims for breach of contract and violation of the antitrust laws. Presently before the Court is plaintiff's motion pursuant to FED.R.CIV.P. 12(b)(6) seeking dismissal of the counterclaims.

## I. BACKGROUND

In November 1982, plaintiff entered into an distribution agreement with Britts. In July 1996, Defendant Richard Wordon acquired Britts and became its sole shareholder. In July 1987, plaintiff entered into an amended wholesaler distribution agreement (the "agreement") with Britts wherein Britts was designated as the exclusive authorized wholesaler representative for plaintiff in the Athens, New York region. In January 1997, Defendant Wordon entered into an "Unlimited Guaranty Contract" with plaintiff whereby he personally guaranteed "payment to [plaintiff] of all indebtedness of Debtor [Britts] to [plaintiff] now existing or hereafter created."

Britts was required to pay plaintiff for its beer products in accordance with approved terms. Under the approved credit terms, Britts was to pay for plaintiff's products within ten days of shipment and typically made payments via electronic fund transfer. On many occasions, plaintiff allowed Britts an additional ten to twenty days within which to tender payment. At numerous times in 1997 and 1998, Anheuser–Busch unsuccessfully attempted to electronically acquire funds from Britts' bank account for payment for products (which they apparently were authorized to do), even after the additional twenty day grace period. The attempted electronic payments failed because of insufficient funds.

Thus, on December 15, 1997, plaintiff wrote Britts stating that there had been an unacceptable number of returned payments and warned that plaintiff expected timely payment. Plaintiff again wrote Britts on May 27, 1998 stating that seventeen more payments had "bounced" and again warning that "[t]his situation is not acceptable."

On June 24, 1998, plaintiff again wrote to Britts stating that:

[P]ursuant to Paragraph 6(a) of the [agreement], this letter constitutes written notice of termination of G.T. Britts as an authorized Anheuser–Busch wholesaler based on G.T. Britt's failure to pay for Anheuser–Busch products in accordance with approved terms and insolvency. As you know, G.T. Britts has failed to pay for Anheuser–Busch products ordered and accepted, despite repeated warnings and extensions of payment due dates. Over sixty separate electronic funds transfers that G.T. Britts has attempted to make as payments for Anheuser–Busch products have been rejected by your bank due to insufficient funds in G.T. Britts's account. Many of these payments "bounced" despite the fact that Anheuser–Busch has already extended you additional time to pay for the beer.

The termination of the ... agreement ... is effective immediately..... In accordance with ... [the] Agreement, Anheuser–Busch is prepared to purchase and G.T. Britts is required to sell G.T. Britts's current inventory of Anheuser–Busch products at G.T. Britts's laid-in cost.[1]

---

1. Paragraph 6 of the agreement provides that: Anheuser–Busch shall have the right, upon giving written notice, which shall be effective upon receipt, to [Britts], to immediately terminate this Agreement (said termination being herein referred to as 'immediate termination') ... without following any of the deficiency termination procedures and without paying any amount to [Britts] upon such immediate termination other than that

required to purchase [Britts'] inventory of [plaintiff's] products [upon] ... [Britt's] failure to pay for [plaintiff's] products in accordance with approved terms.
Agreement, ¶ 6(a). The agreement and the termination letter were annexed to the Complaint and, thus, are properly considered on this Rule 12(b)(6) motion. *See Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998).

On that same day, June 24, 1998, plaintiff commenced the instant lawsuit against defendants asserting causes of action for money due and owing, breach of the agreement, and breach of the Unlimited Guaranty Contract. In their answer, defendants asserted two counterclaims alleging breach of the agreement and violations of the antitrust laws. Plaintiff now moves pursuant to FED.R.CIV.P. 12(b)(6) seeking dismissal of the counterclaims in their entirety.

## II. DISCUSSION

### A. Rule 12(b)(6) Standard

"A [counterclaim] may not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the [counter-claimant] can prove no set of facts in support of his claim which would entitle him to relief. In reviewing a Rule 12(b)(6) motion, this Court must accept the factual allegations of the [counterclaim] as true and must draw all reasonable inferences in favor of the [counter-claimant]. The review of such a motion is limited, and the issue is not whether a [counter-claimant] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt*, 79 F.3d 318, 321 (1996) (internal quotations and citations omitted). "In order to survive dismissal, a [counter-claimant] must assert a cognizable claim and allege facts that, if true, would support such a claim." *Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir.1997). With this standard in mind, the Court will now address plaintiff's motion to dismiss.

### B. Defendants' Antitrust Claim

■ Plaintiff moves to dismiss the antitrust claim on the ground that defendants have failed to plead the requisite antitrust injury. Defendants respond that they have brought their counterclaim pursuant to section 3 of the Clayton Act, 15 U.S.C. § 14, and that plaintiff has adopted a program called "Share of Mind" designed to lessen competition and encourage wholesalers not to carry competing brands.

To establish antitrust injury, defendants "must show more than that [plaintiff's] conduct caused [them] an injury. [Defendants] must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes [plaintiff's] acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. This antitrust injury requirement underscores the fundamental tenet that the antitrust laws were enacted for the protection of *competition, not competitors.*" *Balaklaw v. Lovell*, 14 F.3d 793, 797 (2d Cir.1994) (internal citations and quotations omitted) (emphasis in original). Thus, "[t]he antitrust injury requirement obligates [defendants] to demonstrate, as a threshold matter, 'that the challenged action has had an actual adverse effect on competition as a whole in the relevant market; to prove it has been harmed as an individual competitor will not suffice.'" *George Haug Co. v. Rolls Royce Motor Cars, Inc.*, 148 F.3d 136, 139 (2d Cir.1998) (quoting *Capital Imaging v. Mohawk Valley Med. Assocs.*, 996 F.2d 537, 543 (2d Cir.), *cert. denied*, 510 U.S. 947, 114 S.Ct. 388, 126 L.Ed.2d 337 (1993)).

Defendants have clearly alleged injury to their own business interests. The fundamental flaw in the counterclaim, however, is that it alleges no detrimental impact upon market-wide competition. The relevant portions of the counterclaim are that:

> [T]he true motivation for g.t. BRITT's termination [was] ... to force wholesaler consolidation and/or to work a forfeiture of valuable rights of these Defendants. Ans., ¶ 19.

> Anheuser–Busch exercises its market power ... to force the consolidation of smaller distributors ... and discourage its wholesalers from dealing in the products of other brewers all with the intention and effect of lessening competition. *Id.*, at ¶ 32.

Anheuser–Busch, Inc's termination of the rights of g.t. BRITT's, Inc. is part of a policy ... to force the consolidation of its wholesaler distributors and/or a policy to discourage its wholesale distributors from dealing in the products of its competitors. *Id.*, at ¶ 33; and

g.t. BRITT's has been injured in its business and Richard W. Wordon has been injured in his property by reason of violations on the part of Anheuser–Busch, Inc. of the Anti–Trust Laws ... [and][t]he injuries suffered by g.t. BRITT's and Richard W. Wordon are direct injuries incurred within a sector of the economy, mainly the wholesale distribution of malt beverage, in which the violations of the Anti–Trust Laws by Anheuser–Busch, Inc. and its larger wholesalers threatens a breakdown of competitive economic conditions. *Id.*, at ¶ 35.

The first problem with the counterclaim is that it fails to define the relevant market area or to address plaintiff's market share in the relevant market area. Assuming, for purposes of this motion, that the relevant market area is narrowly defined to include Greene and Columbia Counties, see Ans., at ¶ 5, and accepting all the allegations in the counterclaim as true, the counterclaim, nonetheless, fails to allege any facts from which injury to market-wide competition can be inferred. *See e.g. Textiles Co., Inc. v. A & E Prods. Group*, 18 F.Supp.2d 232, 243 (E.D.N.Y.1998). Rather, defendants merely allege injury to themselves, which is insufficient to confer standing to assert antitrust violations. *Rolls Royce*, 148 F.3d at 139.

Here, plaintiff terminated its distributor agreement with Britts. However, it is not a "violation of the antitrust laws, without a showing of an actual adverse effect on competition market-wide, for a manufacturer to terminate a distributor ... and to appoint an exclusive distributor." *Electronics Comm. Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 244 (2d Cir.1997); *see also Burdett Sound, Inc. v. Altec Corp.*, 515 F.2d 1245, 1248 (5th Cir. 1975) ("A mere unilateral change of distributors is not an unusual business practice, nor is it a violation of the antitrust laws.") (and cases cited); *Bushie v. Stenocord Corp.*, 460 F.2d 116, 119 (9th Cir. 1972). Thus, in order to survive the motion to dismiss, the counterclaim must allege sufficient facts to support an allegation of an adverse effect on market-wide competition.

While defendants attempt to demonstrate reduced market choice, their attempts are insufficient. Defendants contend that because they served as representatives of Anheuser–Busch and other beer producers, but have now been removed as an Anheuser–Busch representative, retailers can no longer purchase different brands of beer from them, thereby reducing competition. Instead, retailers wishing to purchase beer products from different manufacturers presumably are now obligated to contact two distributors rather than one. However, defendants do not assert that, as a result of plaintiff's conduct, retailers are precluded from purchasing competing brands of beer. Furthermore, there is no allegation that another wholesaler to whom plaintiff might award an exclusive dealership in Greene and/or Columbia Counties could not also represent a competitor. Accordingly, accepting the factual assertions in the counterclaim as true, there are insufficient allegations of a reduction in market-wide competition and, thus, no antitrust injury.

■ Assuming, *arguendo*, that defendants can demonstrate the requisite antitrust standing and that the Share of Mind program encourages exclusive distribution agreements, the counterclaim, nonetheless, fails to state a claim for a violation of section 3 of the Clayton Act.[2] "[A]gree-

---

2. The Court notes that the counterclaim does

not allege that plaintiff has actually entered

ments with manufacturers that limit distributors' sales to products made by the manufacturer are not per se violations of antitrust laws. Such an agreement is barred by section 3 of the Clayton Act only if its effect 'may be to substantially lessen competition or tend to create a monopoly in a line of commerce.'" *Lupia v. Stella D'Oro Biscuit Co., Inc.*, 586 F.2d 1163, 1172 (7th Cir.1978), *cert. denied*, 440 U.S. 982, 99 S.Ct. 1791, 60 L.Ed.2d 242 (1979). "[E]xclusive dealing arrangements imposed on distributors rather than endusers are generally less cause for anticompetitive concern" because there may be other avenues available to competing manufacturers to distribute their product. *Omega Environmental, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir.1997) (citing *Ryko Mfg. Co. v. Eden Services*, 823 F.2d 1215, 1235 (8th Cir.1987), *cert. denied*, — U.S. ——, 119 S.Ct. 46, 142 L.Ed.2d 36 (1998)). Indeed, "[i]f competitors can reach the ultimate consumers of the product by employing existing or potential alternative channels of distribution, it is unclear whether such restrictions foreclose from competition any part of the relevant market." *Id.* Here, defendants have failed to allege facts demonstrating that plaintiff's marketing practices foreclosed plaintiff's competitors from a substantial market. *See Lupia*, 586 F.2d at 1172; *Omega*, 127 F.3d at 1162. The Complaint does not allege that Anheuser-Busch's competitors are precluded from reaching retailers because of the Share of Mind program. Accordingly, the counterclaim fails to state a claim under section 3 of the Clayton Act.

■ Finally, in their memorandum of law, defendants assert that "the incentives offered by [plaintiff] to exclusive wholesalers under the Share of Mind program constitute themselves violation of the Rob-

inson Patman amendments to the Clayton Act [see 15 U.S.C. § 13] in that they constitute discriminatory pricing." Mem. of Law,, at 19–20. There are no factual allegations of discriminatory pricing in the counterclaim; rather, the counterclaim merely refers to plaintiff's alleged efforts to "force the consolidation of its wholesaler distributors and/or [institute] a policy to discourage its wholesale distributors from dealing in the products if its competitors." Ans., at ¶ 33. Because the counterclaim makes no reference to discriminatory pricing it fails to satisfy the pleading requirements in FED.R.CIV.P. 8. Assuming that defendant properly pleaded a counterclaim for discriminatory pricing, defendant offers no factual support for a claim under 15 U.S.C. § 13 and, therefore, it must be dismissed under Rule 12(b)(6).[3]

## C. Breach of Contract

■ Plaintiff also moves to dismiss the breach of contract claiming that Britts breached the agreement by failing to make timely payments and, therefore, plaintiff lawfully exercised its right to terminate the agreement. Defendants respond that plaintiff waived its right to timely payment under the agreement and, thus, plaintiff improperly terminated it.

Assuming the facts alleged in the counterclaim to be true, as the Court must on a Rule 12(b)(6) motion, the Court finds that this claim must stand. Two elements give rise to a brech of contract claim: (1) a contract between the parties; and (2) an act allegedly in violation of that agreement. *See Agency Rent A Car v. Grand Rent A Car, Corp.*, 98 F.3d 25, 31 (2d Cir.1996). The counterclaim properly alleges a contract entered into between the parties, see Ans., at ¶ 23; that defendants "performed each and every covenant and condition on its part to be performed ex-

---

into or required exclusive distributor agreements in the relevant market area. Rather, the counterclaim merely alleges that plaintiff is trying to "discourage its wholesalers from dealing in the products of other brewers."

**3.** Having dismissed the antitrust claims, plaintiff's assertion that Richard Wordon, individually, lacks standing to assert an antitrust claim is moot.

cept as the performance of same were waived and/or prevented by [plaintiff]," Ans. at ¶ 24; and that plaintiff breached the agreement by "terminating unilaterally g.t. BRITT's rights thereunder without good cause and/or in bad faith, with resultant damages to g.t. BRITT's, inc. of at least $1,500.00." Ans., at ¶¶ 25. These facts, if true, would properly support a breach of contract claim and, thus, are sufficient for purposes of plaintiff's Rule 12(b)(6) motion.

## III. CONCLUSION

For the foregoing reasons, plaintiff's motion pursuant to FED.R.CIV.P. 12(b)(6) is **GRANTED IN PART** and defendants' counterclaim alleging violations of the antitrust laws is **DISMISSED**. In all other respects, plaintiff's motion is **DENIED**.

**IT IS SO ORDERED**